**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma, Esq.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Phone: (973) 623-3000
Fax: (973) 623-0211

**FINKELSTEIN THOMPSON LLP**
Mila F. Bartos, Esq.
Rosalee B. Connell, Esq.
1050 30th Street, NW
Washington, DC 20007
Phone: (202) 337-8000
Fax: (202) 337-8090

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Luke deBarathy, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | |
| MENU FOODS INCOME FUND, MENU FOODS, INC., a New Jersey corporation, MENU FOODS HOLDINGS, INC., and MENU FOODS MIDWEST CORPORATION, a Delaware corporation, XUZHOU ANYING BIOLOGIC TECHNOLOGY DEVELOPMENT COMPANY LTD., SUZHOU TEXTILE IMPORT AND EXPORT COMPANY, | **CLASS ACTION COMPLAINT** |
| Defendants. | |

Plaintiff Luke deBarathy ("Plaintiff"), individually and on behalf of all others similarly situated, alleges by and through his attorneys, upon information and belief, as follows:

131844 v1

## NATURE OF CASE

Plaintiff brings this class action on behalf of himself and a class of consumers and entities who purchased brands of pet food manufactured by Defendants that caused at least tens-of-thousands of pets to suffer severe illness or death. Pet owners, believing Defendants' products to be free from any harmful contaminants and safe for pet consumption, incurred substantial expenses as a result of purchasing Defendants' pet food products and veterinary monitoring and treatment that became necessary after the owners' pets consumed Defendants' pet food products. Such expenses were much greater for those pet owners whose pets became terminally ill after consuming Defendants' pet food products. Such costs arose and were intentionally exacerbated by the imprudently undue delay by Defendants to announce the dangers associated with its dog and cat foods. Although Defendants had knowledge that pet illnesses and deaths could be related to their pet foods, Defendants purposefully waited nearly a month before informing the public and the Food and Drug Administration (FDA) that Defendants were recalling its products. Defendants' lethal products, and the companies' excessive delay in warning consumers and regulatory agencies as to the dangers associated with its pet food products, resulted in significant financial loss to thousands of pet owners.

## JURISDICTION AND VENUE

1. The Court has original jurisdiction over this class action pursuant to 28 U.S.C. §1332(d)(2).

2. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

3. The members of the putative Class have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs.

## PARTIES

4. Plaintiff Luke deBarathy is a resident of Federal Way, Washington.

5. Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

6. Defendant Menu Foods Holdings, Inc. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware.

7. Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110. Menu Foods, Inc. is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

8. Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801. Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods Holdings, Inc.

9. Defendant Xuzhou Anying Biologic Technology Development Company Ltd. is a Chinese company with its principal executive offices located at Wangdigan Industrial Zone, Peixian, CN-32, China 221623.

10. Defendant Suzhou Textile Import And Export Company is a Chinese company with its principal executive offices located at ZhuHui Road 121#, CangLang District, SuZhou, Jiangsu, China 215006.

11. Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., Menu Foods Midwest Corporation, Xuzhou Anying Biologic Technology Development Company Ltd., and Suzhou Textile Import And Export Company are collectively referenced as "Defendants."

12. At all times herein mentioned, Defendants were the agents, principals, employees,

servants, partners, joint venturers, and representatives of each other. In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

## FACTUAL ALLEGATIONS

13. Defendants manufacture, sell, market and promote pet food products internationally and are the biggest supplier of pet food products in North America.

14. Defendants sell, market and promote pet food products under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

15. Defendants sell, market and promote their brands internationally and in some of the largest major retail chains in the United States, such as Wal-Mart, Safeway, Kroger, PetSmart and Meijer.

16. On March 16, 2007, Defendants, in conjunction with the Food and Drug Administration (FDA), announced a massive immediate recall of approximately 60 million containers of "cuts and gravy" pet food (pet food consisting of pieces of meat in gravy) throughout the United States based on widespread reports of pet illness and death, mostly related to kidney failure. The recall covers all "cuts and gravy" wet pet food produced and distributed by Defendants, including over ninety different brands of dog and cat food. Some of the brands recalled include, Iams, Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet food recall in United States history.

17. In early April, Defendants expanded its original recall to include 42 varieties of products including "cuts and gravy"- style products made between November 8, 2006 and March 6, 2007.

18. However, Defendants waited an excessive period of time before deciding to recall its harmful and lethal products. Defendants first started receiving complaints of pet illnesses and deaths as early as late-February, almost a full month before deciding to recall its products. *See*,

*e.g.*, CBSNews.com, *Pet Food Co. Knew of Problem Last Month*, March 20, 2007, *at* http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last viewed March 22, 2007). Rather than announcing its products' potential harmful effects on pets as soon as Defendants became aware of the numerous amounts of reported pet illnesses and deaths, Defendants decided to remain silent and conduct their own internal investigation. Defendants performed various tests on over 50 animals to observe the animals' reactions to Defendants' pet foods. Approximately one in six of the animals tested died. Yet, Defendants again waited until as many as seven test subjects died after eating its pet food before finally announcing its findings to the FDA and deciding that a recall and announcement to the public would be necessary.

18. As a direct cause of Defendants' unnecessary and protracted delay, as of April 6, 2007, there have been an alarming number of pets diagnosed with kidney failure nationwide, and additional reports continue to be announced hourly.

19. One source indicated that 9,378 dogs and cats were either sick or dead as a result of Defendants' recalled food products. 3,242 pets have been reported as deceased as a result of Defendants' food products. *See* http://www.petconnection.com/blog/ (last viewed April 6, 2007).

20. Pet owners purchased Defendants' products believing them to be safe for pet consumption and beneficial to their pets. However, the "cuts and gravy" style pet food that pet owners across the nation fed their pets has proven to be toxic, causing renal failure in cats and dogs as well as physical disorders such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

21. Pet owners have incurred substantial expenses relating both to the purchase of Defendants' pet food and from the medical costs associated with monitoring and treating pets who have consumed, or were thought to have consumed, Defendants' contaminated food products. Indeed, several pet owners have accrued veterinary bills that soar into the several thousands of dollars. Furthermore, for those pet owners whose pets became terminally ill, they were forced to incur additional costs relating to their pets death, such as euthanizing and, for

some, burying or cremating their pet.

22. Currently, Defendants still have not identified the cause of the food toxicity. However, aminopterin, a substance found in rat poisons, was recently discovered in the recalled foods.

23. Moreover, it was recently discovered that the wheat gluten imported from one of Defendants' gluten suppliers in China contained melamine, a potentially harmful chemical used in fertilizers in Asia and forbidden in pet foods.

24. In addition, pet owners who have become increasingly concerned about their pet's health after learning of the recall have received little to no relief from Defendants. Defendants have failed to manage the high volume of incoming complaints. Since instituting the recall, pet owners have been largely unable to reach Defendants' customer service representatives, often encountering busy signals or voicemail messages. *See, e.g.*, Thejournalnews.com, *Pet Owners Growling over Food Recall*, March 20, 2007, *at* http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS01/703200345/1066 (last viewed March 22, 2007). Defendants have been widely criticized for being uncooperative with customers, for not disseminating helpful information out to the public sooner, and for failing to "get control of the crisis . . . employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available at* http://www.nj.com/starledger/stories/index.ssf?/base/business-6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

25. Since the recall, Defendants have received scores of complaints and questions from consumers like Plaintiff who purchased its contaminated pet food products and from those whose pets became ill or died after consuming Defendants' pet food products.

26. The complaints found throughout the Internet and in many of the news stories mentioned above each contain the same common theme of consumers who unwittingly purchased Defendants' food products and who were forced to take their pets to veterinarians for medical treatment after their pets became extremely, and sometimes terminally ill.

131844 v1

6

27. Plaintiff Luke deBarathy purchased and fed Science Diet, Iams Slices, and Beef in Gravy brand wet pet food to his cat, Hoser. Science Diet, Iams Slices, Beef in Gravy are brands of cat food recalled by Defendants.

28. After eating the cat food, Hoser became noticeably ill. Mr. deBarathy admitted Hoser to a veterinarian for diagnosis and treatment, where it was discovered that Hoser was diagnosed with kidney failure.

29. In order to treat Hoser's failing renal system, a veterinarian began administering fluids to Hoser intravenously, supplying Hoser with supplemental vitamins for his extreme malnutrition. The veterinarian is continuing to monitor Hoser's condition.

30. Hoser's diagnosis, treatment and monitoring cost Mr. deBarathy over $600 in four days. The veterinarian caring for Hoser, a 7-month old kitten, has suggested placing Mr. deBarathy's cat under veterinarian supervision until further notice. However, these additional costs may cause Mr. deBarathy to endure further economic hardships.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of himself and all others similarly situated as members of the following class (the "Class"): All persons and entities that purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

32. Subject to additional information obtained through further investigation and discovery, the Class definition may be expanded or narrowed by amendment or amended complaint. Specifically excluded are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

33. **Numerosity**. The members of the Class are so numerous that their individual

joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains tens of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

34. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

   a.   Whether Defendants intentionally, recklessly or negligently authorized injurious pet food to enter the market;

   b.   Whether Defendants failed to properly test their "cuts and gravy" style dog and cat food before market entry of such food;

   c.   Whether Defendants intentionally, recklessly or negligently delayed in instituting a recall of its "cuts and gravy" style dog and cat food;

   d.   Whether Defendants' recall is adequate and properly notifies potentially affected consumers;

   e.   Whether Defendants have been unjustly enriched as a result of their conduct, as alleged herein; and

   f.   Whether Plaintiff and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages.

35. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class purchased "cuts and gravy" style dog or cat food manufactured, distributed, marketed and/or sold by Defendants.

36. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

Plaintiff has no adverse or antagonistic interests to those of the Class.

37. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

38. In the alternative, the Class may be certified because:
   a. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;
   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or
   c. Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

39. Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

40. Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class. The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class. Such monies are the property of the Plaintiff and the Class. All or a portion of this benefit retained by Defendants is money in which Plaintiff and the Class have an ownership interest. Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF
### (Negligence)

41. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

42. Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

43. Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

44. Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

45. Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

46. The losses and damages described herein were foreseeable and avoidable.

47. Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

## SECOND CLAIM FOR RELIEF
### (For Unjust Enrichment)

48. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

49. Defendants have received, and continue to receive, a benefit at the expense of Plaintiff and members of the Class. Defendants have knowledge of this benefit.

50. Defendants have charged and collected from consumers, including Plaintiff and members of the Class, money for dog and cat food that endangers the lives of their pets. Defendants thus have received benefits that they have unjustly retained at the expense of Plaintiff and members of the Class.

51. As a direct and proximate result of Defendants' unlawful acts and conduct, Plaintiff and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendants, and are therefore entitled to restoration of their monies.

## THIRD CLAIM FOR RELIEF
### (Breach Of Express Warranty)

52. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

53. Defendants expressly warranted that their "cuts and gravy" style pet food was suitable and safe for pet consumption.

54. Defendants also expressly warranted that "it manufacturer[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

55. Plaintiff and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

56. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of

their express warranty.

## FOURTH CLAIM FOR RELIEF
### (Breach Of Implied Warranty)

57. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of himself and the Class.

58. Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

59. Through their marketing, advertising, promotion and labeling of their "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform Commercial Code.

60. Through their marketing, advertising, promotion and labeling, Defendants knew that Plaintiff and the Class would purchase their pet food for the ordinary purpose of providing nourishment to their pets.

61. Defendants manufactured, distributed, marketed, advertised, promoted and sold their pet food for the ordinary purpose for which it was purchased by Plaintiff and the Class.

62. Plaintiff and the Class relied upon Defendants' representations and warranties, and purchased and used Defendants' pet food for the ordinary purpose for which it was sold.

63. Defendants' pet food purchased by Plaintiff and the Class were unfit for their ordinary purpose when sold. Such food was sold while presenting a risk of illness or death to pets. Defendants have accordingly breached the implied warranty of merchantability by selling such unfit pet food.

64. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of warranty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel of record to represent the Class;

2. For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3. For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

4. For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

5. For pre-judgment and post-judgment interest;

6. For reasonable attorneys' fees and costs of suit, including expert witness fees; and

7. For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

To the full extent available, Plaintiff demands a trial by jury.

Dated: April 9, 2007

**LITE DEPALMA GREENBERG & RIVAS, LLC**
By: _____
Joseph J. DePalma
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0211

**FINKELSTEIN THOMPSON LLP**
Mila F. Bartos, Esq.
Rosalee B. Connell, Esq.
1050 30th Street, NW
Washington, DC 20007
Telephone: (202) 337-8000

*Attorneys for Plaintiff and the Class*

131844 v1

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Plaintiff, by his attorneys, hereby certifies that to the best of his knowledge, the matter in controversy is related to Workman, et al. v. Menu Foods, Inc., et al., Civil Action No. 07-1338 (NLH-AMD), Julie Hidalgo v. Menu Foods, Inc., et al., Civil Action No. 07-1456 (NLH), Nunez v. Menu Foods, Inc., et al., Turturro v. Menu Foods, Inc., et al., Gagliardi v. Menu Foods, Inc., et al., Goldring v. Menu Foods, Inc., et al., Wilson v. Menu Foods, Inc., et al., Freeman v. Menu Food Inc., et al., Diana Diedrich v. Menu Foods Inc., et al., and Todd Sokolwski v. Menu Foods, Inc., et al. and Steve Colquitt and Marianna Cutter v. Menu Foods, Inc. et al. which are simultaneously being filed today. Plaintiff is not currently aware of any other party who should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the fore going statements made by me are wilfully false, I am subject to punishment.

Dated: April 9, 2007

LITE DEPALMA GREENBERG & RIVAS, LLC
By: _____
Joseph J. DePalma
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000